**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-00770-REB-KMT

RODNEY SMITH,

     Plaintiff,

v.

BOARD OF GOVERNORS OF THE COLORADO STATE UNIVERSITY SYSTEM,

     Defendant.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

This matter is before me on **Defendant's Motion for Summary Judgment**

[#36][1] filed April 4, 2016.  The plaintiff filed a response [#39], and the defendant filed a

reply [#40].  I grant the motion.

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) &

§ 1367 (supplemental jurisdiction).

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is

necessary.  ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10th Cir. 1995).  Summary

judgment is proper when there is no genuine dispute as to any material fact and the

---

[1]  "[#36]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

movant is entitled to judgment as a matter of law.[2]   **FED. R. CIV. P.** 56(a); ***Celotex Corp.***

***v. Catrett***, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be

resolved in favor of either party.  ***Matsushita Electric Industrial Co., Ltd. v. Zenith***

***Radio Corp.***, 475 U.S. 574, 586 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131,

1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the

case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986); ***Farthing***, 39 F.3d

at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine issue of fact.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d

1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has

been properly supported, the burden shifts to the nonmovant to show by tendering

depositions, affidavits, and other competent evidence that summary judgment is not

proper.  ***Concrete Works***, 36 F.3d at 1518.  All  evidence must be viewed in the light

most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel***

***Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326

(10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999) (abrogated on other grounds, ***Martinez v.***

***Potter***, 347 F.3d 1208, 1210 - 1211 (10th Cir. 2003); ***Eisenhour v. Weber Cnty.***, 744

F.3d 1220, 1227 (10th Cir. 2014)).  However, conclusory statements and testimony

based merely on conjecture or subjective belief are not competent summary judgment

evidence.  ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* **FED. R. CIV. P. 56(a)**. ***Geear v. Boulder Cmty. Hosp.***, 844 F.2d 764, 766 (10th Cir.1988) (holding that any hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

S.Ct. 334 (1999); **Nutting v. RAM Southwest, Inc.**, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

## III.  BACKGROUND

The plaintiff, Rodney Smith, an African American male, began his employment with the Colorado State University Police Department (CSU PD) in January 1991.  In 2002, Mr. Smith received a promotion to Police Officer II (Corporal).  Mr. Smith alleges he began to suffer from a hostile work environment beginning in 2003.  He alleges the harassment was motivated by his race and culminated in an effort to have him terminated from his employment.

In 2003, CSU PD hired Dexter Yarbrough, an African American male, to serve as its Chief of Police.  Throughout his tenure, Chief Yarbough was overheard using a handful of different racial slurs.  In the mid-2000s, at a meeting not attended by Mr. Smith, Chief Yarbough referred to plaintiff as "the 'N' word."  *Response* [#39], Exhibit 1 [#39-1], CM/ECF p 48.  In 2006, during an hiring interview for Sergeant Jon Falbo, a non-African American applicant, Chief Yarbough once again used the "N-word." *Response* [#39], Exhibit 2 [#39-2], CM/ECF pp 1–3.  Finally, Chief Yarbough often referred to Fort Collins as "vanilla valley," due to its lack of racial minorities.  *Response* [#39], Exhibit 4 [#39-4], CM/ECF p 1.

Mr. Smith believes he became a target of Chief Yarbough, beginning in 2008, because information Mr. Smith provided to his supervisor was used to initiate an internal investigation into three CSU PD officers. *Response* [#39], Exhibit 1 [#39-1], CM/ECF pp 42–44.  At the end of the investigation, Chief Yarbrough promoted all three officers involved despite evidence one had done something improper and that officer asked the other two officers to lie for him.  *Response* [#39], Exhibit 5 [#39-5], CM/ECF pp 2–5.

One of the three officers, Sergeant Aaron Turner, who held the rank of officer at the time, refused to lie for the other officer.  *Id.*

In relation to the internal investigation, Chief Yarbrough wrote a memo to the CSU interim president complaining that the human resources investigator contracted to review the internal CSU PD investigation discriminated against Chief Yarbrough and Captain Frank Johnson based on their African American race.  *Response* [#39], Exhibit 3 [#39-3], CM/ECF pp 9–11.  In 2009, Chief Yarbrough was investigated for incidents of misconduct unrelated to the previous internal investigation or racial discrimination.  *Response* [#39], Exhibit 6 [#39-6], CM/ECF pp 11–12.  In March 2010, Chief Yarbrough was terminated by CSU for misconduct.

Mr. Smith describes other instances where he believes his race may have played a contributing factor.  After being promoted in 2002, Mr. Smith claims he was frequently passed over for promotion or eliminated early on in the promotion process.  *Response* [#39], Exhibit 1 [#39-1], CM/ECF pp 42–44.  Sometime in either 2011 or 2012, Mr. Smith received a negative performance report which was left visible for other officers to read while Mr. Smith was on vacation.  *Id.* p 52.  Additionally, Mr. Smith felt harassed when he received a disciplinary warning, referred to as a write-up, for not responding to assist on an arson and failing to save his investigative reports after making corrections.  *Id.* pp 46–47, 52.  Moreover, during a training event sometime between 2010 and 2013 Mr. Smith was called a "monkey" by a fellow officer.  *Id.* p 35.  Finally, in 2013, Captain Johnson, the only other African American officer at CSU PD, warned Mr. Smith not to "get pushed out" of CSU PD and to leave on his own terms.  *Id.* p 45.

Matters came to a head in June 2013, when Mr. Smith attempted to qualify on his duty weapon. As a police officer, Mr. Smith was required to qualify with his duty weapon

on an annual basis as part of his job duties.  To qualify, all CSU PD officers had to pass the Peace Officer Standards and Training (POST) Certification course.  The POST handgun qualification course consisted of nine different timed phases.  The shooter was required to hit the target from various designated distances and perform specific movements while firing.  All twenty-five rounds had to hit the silhouette of the target. The number of qualification attempts was at the discretion of the CSU PD.  *Response* [#39], Exhibit 6 [#39-6], CM/ECF p 6.

In May and June 2013, Mr. Smith attempted to meet the requirements of the POST course on four different days, completing a total of twelve attempts.  On May 7, 2013, Mr. Smith was afforded three attempts and failed to meet the requirements.  On June 11, 2013, Mr. Smith was provided remedial training and an additional four attempts.  Notwithstanding, he failed to qualify.  During his second qualification attempt on June 11, 2013, Mr. Smith's firearm suffered a malfunction as a result of the ammo possibly being loaded in the magazine backwards.  *Response* [#39], Exhibit 8 [#39-8], CM/ECF p 3.  On June 14, 2013, Mr. Smith was once again provided remedial training and an additional four attempts to qualify.  On June 17, 2014, Mr. Smith was provided remedial training and one final opportunity to qualify on his firearm.  Again, he failed to qualify.

During this time period the CSU PD firearm instructors were Officer Clint Schnorr, Sergeant Falbo, and Sergeant Turner (the instructors).  Sergeant Turner was involved in the internal investigation in 2008.  *Response* [#39], Exhibit 5 [#39-5], CM/ECF pp 2–3.  Additionally, Sergeant Falbo,  *Response* [#39], Exhibit 2 [#39-2], CM/ECF p 1,  and the Chief of CSU PD, Lowell Harris, were hired by former Chief Yarbrough, *Response* [#39] ¶ 34.

Mr. Smith does not claim the instructors discriminated against him on May 7, June 11, 2013, or June 17, 2014. He does assert that on the third day, June 14, 2013, the instructors intentionally discriminated against him and were responsible for his failures to qualify. On June 14, 2013, Mr. Smith attended remedial training with Officer Michelle Igne, a non-African American female. During the remedial training and subsequent qualification attempts, Mr. Smith and Officer Igne both encountered malfunctions with their firearms. On the first qualification attempt, Mr. Smith was unable to fire all the required rounds because he loaded the wrong caliber of ammunition into his weapon. Mr. Smith loaded a .40 caliber round into his 9mm magazine. *Response* [#39], Exhibit 8 [#39-8], CM/ECF p 4. On the second attempt Mr. Smith once again failed to fire all the required rounds because he loaded an empty magazine into his firearm and once again loaded a .40 caliber round into his 9mm magazine. *Id.* During the third attempt, Officer Igne suffered a malfunction with her firearm that required the instructors to clear the firing line. *Id.* at 5. The malfunction was a result of Officer Inge loading a 9mm round into her .40 caliber magazine. *Id.* Up until the time the firing line had to be cleared on the third attempt, Mr. Smith had successfully fired all his rounds into the silhouette. *Id.* Mr. Smith alleges the instructors intentionally gave him a mix of 9mm and .40 caliber ammo. *Complaint* [#1] ¶ 20. Moreover, Mr. Smith asserts he was treated differently from Officer Igne for the same mistake of loading the wrong ammunition. *Response* [#39] p 16.

Prior to his fourth attempt on June 14, the instructors provided Mr. Smith with a new box of 9mm ammunition, time to calm down, and an opportunity to practice. *Response* [#39], Exhibit 8 [#39-8], CM/ECF p 5. On the fourth attempt at the course of fire, Mr. Smith placed all twenty-five shots within the silhouette; however, the instructors

6

determined he failed to take the required three steps backward during the final phrase.

Mr. Smith contends he did take the required steps back.  Mr. Smith claims after the

course of fire none of the instructors said anything until Sergeant Falbo walked behind

Mr. Smith, made a gesture to the other instructions, and then told plaintiff he did not

take the required three steps.  *Response* [#39], Exhibit 1 [#39-1], CM/ECF pp 29–30.

Officer Schnoor counted the hits on the target.  *Id.* at 49–50.  Sergeant Turner

contacted Chief Harris, who was a Lieutenant at the time, via phone.  *Response* [#39],

Exhibit 9 [#39-9], CM/ECF pp 1.  The instructors then conversed with each other.

*Response* [#39], Exhibit 2 [#39-2], CM/ECF p 11.  Mr. Smith believes the instructors

conspired to deny him POST certification to have him terminated because of his race.

*Response* [#39] p 17.  Moreover, Mr. Smith  asserts he was treated differently from

other non-African American officers he previously witnessed qualify who did not take the

required three steps.  *Response* [#39], Exhibit 1 [#39-1], CM/ECF pp 10–12, 22.

At some unknown point during his remedial firearms training, Mr. Smith was

placed on administrative leave.  *Response* [#39], Exhibit 6 [#39-6], CM/ECF p 6.  His

weapon was confiscated by CSU PD.  *Response* [#39], Exhibit 2 [#39-2], CM/ECF p 8.

Therefore, for an unknown period of time Mr. Smith did not have control of his firearm.

*Response* [#39] ¶ 26.  Prior to the final qualification attempt on June 17, 2015, Sergeant

Falbo told Mr. Smith he had disassembled Mr. Smith's weapon in order to clean it.

*Response* [#39], Exhibit 1 [#39-1], CM/ECF p 6.  After the failure to qualify on June 17,

2013, Chief Harris referred plaintiff to the CSU Human Resources department for

retention consideration.  *Response* [#39], Exhibit 6 [#39-6], CM/ECF p 9.

On June 21, 2013, CSU PD asked Fort Collins Police to conduct a basic firearms

skills assessment of Mr. Smith.  *Response* [#39], Exhibit 8 [#39-8], CM/ECF p 8. CSU-

PD did not provide the Fort Collins Police any background on the firearm history of the Mr. Smith. *Id.* During the assessment, the slide of Mr. Smith's firearm did not lock to the rear as expected during a combat reload. *Id.* at 9. It is unknown if this was as a result of the actions of the Mr. Smith or an equipment failure. *Id.* Although the assessment was not a qualification attempt, Mr. Smith did shoot the POST Certification course of fire. *Response* [#39], Exhibit 6 [#39-6], CM/ECF pp 8–9. Mr. Smith was unable obtain a passing score during the POST course of fire for two reasons. *Response* [#39], Exhibit 8 [#39-8], CM/ECF p 9. First, he was not able to fire one of the required rounds because the firearm slide did not lock to the rear, which resulted in a delay of the combat reload. *Id.* Second, one of the fired rounds missed the silhouette. *Id.* After the firearms skills assessment, CSU Human Resources requested that the Larimer County Sheriff's Office examine Mr. Smith's weapon to ensure it was in good working order. *Response* [#39], Exhibit 10 [#39-10], CM/ECF p 3. The weapon was determined to be fully functional. *Id.*

Mr. Smith was terminated from his employment on August 28, 2013. *Id.* at 1. Defendant says it terminated Mr. Smith because he failed to meet the annual requirement for POST Certification after bring allowed numerous attempts. *Id.* POST Certification was a requirement for the position of officer with CSU PD because of the need for officers to be able to respond to stressful situations and use their firearm if necessary. *Id.* In response to Mr. Smith's allegations that he was intentionally provided a mix of caliber ammunition, defendant provided the POST Certification manual which states, "Ammunition management is the shooter's responsibility." *Id.* at 3. Additionally, the CSU Human Resources Associate Director noted someone unfamiliar with

ammunition would be able to distinguish the difference between .40 caliber and 9mm ammunition.  *Id.*

The defendant notes that Mr. Smith, during his deposition testimony, provided a different reason, aside from race, as to why the instructors denied him POST Certification on June 14, 2016.  *Motion* [#36], Exhibit A [#36-1], CM/ECF pp 46–51.  In his deposition, Mr. Smith testified he believed the instructors received a directive from Chief Harris to not qualify plaintiff because Chief Harris wanted plaintiff terminated.  *Id.* Mr. Smith alleges Chief Harris wanted plaintiff terminated because other officers in the CSU PD had complained about plaintiff having a higher salary than higher ranking officers due to his time in service.  *Id.*  However, the other officers also complained about another similarly situated non-African American officer in the CSU PD.  *Id.*

Chief Harris, Sergeant Falbo, and Officer Schnorr all testified that Mr. Smith was not proficient as an officer.  *Response* [#39], ¶ 35.  Sergeant Falbo concluded that Mr. Smith should have been terminated before August 2013.  *Id.*  Chief Harris felt Mr. Smith was a liability to the university.  *Response* [#39], Exhibit 6 [#39-6], CM/ECF p 8.

In his complaint, Mr. Smith asserts a claim of hostile work environment based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Civil Rights Act of 1866, 42 U.S.C. § 1981.[3]  He alleges the instructors sought to oust him from the CSU PD because of his race. *Complaint* [#1], ¶ 21.

## IV.  ANALYSIS

A claim for hostile work environment requires proof sufficient for a "rational jury [to] find that the workplace [was] permeated with discriminatory intimidation, ridicule,

---

[3] A separate claim for infliction of emotional distress was dismissed by stipulation.  **Order Dismissing Claim** [#35] filed February 16, 2016.

and insult, that [was] sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment." *MacKenzie v. City*

*and County of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (quoting *Penry v.*

*Federal Home Loan of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998), *cert. denied*,.

119 S.Ct. 1334 (1999)) (internal quotation marks omitted; alterations in original).  This

standard is designed to "filter out complaints attacking the ordinary tribulations of the

workplace, such as the sporadic use of [racial] jokes, and occasional teasing," and,

thus, to prevent Title VII from becoming "trivialized as a civility code." *Id.*  Whether this

standard is met requires consideration of the totality of the circumstances, including: "(1)

the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether

the conduct is physically threatening or humiliating, or a mere offensive utterance; and

(4) whether the conduct unreasonably interferes with the employee's work

performance." *Id.*  In addition, the environment must be both objectively and

subjectively hostile or abusive. *Id.*

Mr. Smith contends former CSU PD Chief Yarbrough's use of racial epithets from

2003–2010 reflects a hostile work environment.  Further, Mr. Smith claims the hostility

and criticism he received from his fellow officers from 2010–2013 reflects a hostile work

environment.  Finally, Mr. Smith asserts that in 2013, he suffered a singular and severe

act of discrimination sufficient to establish a hostile work environment when he was

denied POST certification and, ultimately, his employment was terminated.

Even if I consider all comments allegedly attributable to former Chief Yarbrough,

those comments are insufficient as a matter of law to create a genuine issue of material

fact as to the pervasiveness of the harassment in the work environment.  The evidence

provided fails to meet the standard of showing "more than a 'few isolated incidents of

racial enmity'" that is required to make an actionable hostile work environment claim.

***Paris v. Southwestern Bell Telephone Co.***, 94 F. App'x 810, 814 (10th Cir. 2004),

***cert. denied***, 125 S.Ct. 619 (2005) (quoting ***Trujillo v. Univ. of Colo. Health Science***

***Center,*** 157 F.3d 1211, 1214 (10th Cir. 1998). Instead, Mr. Smith relates a handful of

racially insensitive comments he never heard himself over a period of more than seven

years.  Such sporadic comments, while not laudable, will not support a claim for hostile

work environment. ***Id.***  Moreover, Mr. Smith fails to demonstrate a persuasive nexus

between the handful of comments made by former Chief Yarbrough and the instructors

who denied Mr. Smith POST certification three years after the termination of Chief

Yarbrough.

Mr. Smith has failed to present any evidence that the hostility and criticism he

received from his fellow officers between the years of 2010 and 2013 were motivated by

racial animosity, as opposed to mere personal animosity.  Personal animosity not

motivated by unlawful discrimination is not actionable. ***See Bolden v. PRC Inc.***, 43

F.3d 545, 551 (10th Cir. 1994), ***cert. denied***, 116 S.Ct. 92 (1995); ***Klen v. Colorado***

***State Board of Agriculture***, 2007 WL  2022061 at *19 (D. Colo. July 9, 2007).  None of

the hostility and criticism described by Mr. Smith included any overt racial comments.

At best, Mr. Smith's evidence shows nothing more than "the run-of-the-mill . . . annoying

behavior that is not uncommon in American workplaces," but which "is not the stuff of a

Title VII hostile work environment claim." ***Morris v. City of Colorado Springs***, 666

F.3d 654, 664 (10th Cir. 2012). Even if these actions included a latent racial motivation,

the evidence in the record does not show that these actions unreasonably interfered

with Mr. Smith's work.

Finally, Mr. Smith claims he was denied POST certification due to the racial animosity of the instructors and Chief Harris.  Mr. Smith claims the denial of POST certification because he failed to take three steps backward on the final phase was a singular and severe act of discrimination sufficient to establish a hostile work environment.  However, the only evidence provided of discriminatory racial animosity is plaintiff's own conclusory statements that he was treated less favorably at the firing range than other non-African American officers similarity situated.  Other than his conclusory statements, Mr. Smith has not presented evidence that the instructors or Chief Harris conspired against him because he was African American.  Mr. Smith asserts that the instructors may have tampered with his firearm or intentionally provided him with the wrong ammunition.  He claims these actions led to the malfunctions that prevented him from qualifying.  However, Mr. Smith fails to present any direct evidence that the instructors were involved in such conduct.  Mr. Smith's uncircumstantiated suspicions do not constitute evidence sufficient to show the existence of a genuine issue of material fact for trial.

## V.  CONCLUSION & ORDERS

The evidence, viewed in the light most favorable to Mr. Smith, does not support a conclusion that a reasonable fact finder could view these events, singly or in combination, as sufficiently severe or pervasive to create a hostile working environment. Further, Mr. Smith has presented no credible evidence that the relevant decision makers acted with an improper racial motive. Thus, the defendant is entitled to summary judgment.

 **THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendant's Motion for Summary Judgment** [#36] filed April 4,

2016, is granted;

2. That the claim of the plaintiff in his complaint [#1] is dismissed with prejudice;

3. That judgment shall enter in favor of the defendant, Board of Governors of the

Colorado State University System, and against the plaintiff, Rodney Smith;

4. That the combined Final Pretrial Conference and Trial Preparation

Conference set March 22, 2017, and the jury trial set to begin April 10, 2017, are

vacated;

5. That the defendant is awarded its costs, to be taxed by the clerk of the court

in the time and manner specified by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

and

6. That this case is closed.

Dated March 9, 2017, at Denver, Colorado.

 **BY THE COURT:**

 Robert E. Blackburn
 United States District Judge